UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                          Case No. 808-75665-reg

ROSEMARIE DeVANZO,

                                          Chapter 7

                          Debtor.
------------------------------------------------------------------x
RICHARD L. STERN, Chapter 7 Trustee

                    Plaintiff,                Adv. Proc. No. 8-09-08128-reg

      -against-

MARLO MOLANO,

                    Defendant.
------------------------------------------------------------------x

## <u>MEMORANDUM DECISION</u>

       This matter is before the Court pursuant to an adversary proceeding no. 09-08128

pending in the bankruptcy case of Rosemarie DeVanzo (the "Debtor").  The plaintiff is Richard

L. Stern, Esq. (the "Trustee" or "Plaintiff"), the Chapter 7 trustee for the Debtor's estate.  The

defendant is Marlo Molano (the "Defendant"), who co-owns along with the Debtor, real property

located in Bayside, New York (the "Real Property").  Through this adversary proceeding, the

Plaintiff seeks to sell the Debtor's interest in the Real Property free and clear of the Defendant's

interest, pursuant to §§ 541, 542 and 363(h) of the Bankruptcy Code, and thereafter determine

the Defendant's distributive interest in the sale proceeds.  The Court held a trial on this matter on

February 23, 2010 and granted the parties three weeks thereafter to file post-trial briefs.  This

matter, therefore, was fully submitted for decision as of March 16, 2010.

       The primary issue before the Court is whether, under the facts of this case, the sale of the

Real Property will result in a benefit to the estate that outweighs the detriment to the Defendant.

The Court is guided in its analysis of this issue by the Bankruptcy Code, New York real property law and applicable case law.  It is axiomatic that the Trustee must at the outset establish that the proposed sale does in fact create a benefit to the estate.  The burden then shifts to the Defendant to demonstrate that the sale of the Defendant's interest in the Real Property would result in a detriment to the Defendant.

In this Circuit, the factors to be considered when determining the detriment to the Defendant may be both economic and non-economic, where appropriate.  Then, the Court must balance the benefit to the estate against the detriment to the Defendant.  There is no requirement that the benefit to the estate must significantly outweigh the detriment to the Defendant.  When weighing the detriment to the Defendant against the benefit to the estate, this Court believes that greater weight should be given to economic factors than non-economic factors.  This is especially so where real property is owned by tenants in common where co-tenants may unilaterally sever the tenancy at any time by bringing a partition action under the New York Real Property Actions and Proceedings Law.  Co-tenants, therefore, have a diminished expectation of remaining in possession of the property against the will of their co-owner.  This distinguishes tenants in common with tenants by the entirety.

The facts of this case and relevant law support the Trustee's view that the economic benefit to the estate, *i.e.,* a projected forty-five percent distribution to general unsecured creditors, is significant.  Despite non-economic detriment to the Defendant, such as the presence of minor children in the home who attend local schools, the Court concludes that the benefit to the estate, provided the Real Property is sold for $540,000 or greater, outweighs the detriment to the Defendant.

### *Facts*

The Debtor and the Defendant stipulate that they jointly hold title to the Real Property as tenants in common.  The Defendant testified that she paid $150,000 and the Debtor paid $20,000 for a total down payment on the Real Property of $170,000.  The purchase price of the Real Property was approximately $535,000.  By agreement between the Debtor and the Defendant, and despite the fact that the Debtor's contribution only constituted approximately twelve percent (12%) of the down payment, the Debtor received a thirty-five percent (35%) interest in the Real Property, as stated in the deed dated February 10, 2005.

The Defendant explained at trial why the Debtor received a thirty-five percent interest, in the Real Property:

> She received 35% because we had a very close relationship and I had three children, I have three children, and she was alone, so we both were looking to purchase something but we realized that if we did it together we could share the responsibility. And so we decided that all of the bills of the house including mortgage, taxes, electric, all of the expenses would be divided equally, fifty-fifty. So we agreed to this and because obviously my family was bigger and so, you know, I would probably take a little more space in the house, I agreed to give her on the deed 35% and I would have 65% and we really believed that we would live in the house for the duration of our lives together. And that's why I had 65 and she had 35.

The Defendant also testified that neither she nor the Debtor would have qualified for a mortgage on the Real Property alone.  The Defendant admits that the Debtor had better credit and thus was able to secure a more favorable mortgage.

The Real Property is encumbered by a first mortgage held by JP Morgan Chase Bank, N.A., as purchaser of the loans and other assets of Washington Mutual Bank ("Chase Bank"),

dated February 10, 2005, in the amount of $359,650 (the "First Mortgage"). A payoff balance[1]

on the First Mortgage as of February 4, 2010 is estimated at $365,237 and as of March 2, 2010

the payoff is estimated at $366,750. The First Mortgage secures a Note (the "Note"), dated

February 10, 2005,which is signed only by the Debtor. However, the First Mortgage lists the

Debtor and the Defendant as "borrower." The Real Property also is encumbered by an equity

line of credit in the amount of $25,350 (the "Second Mortgage"). A payoff balance on the

Second Mortgage as of February 19, 2010 is estimated at $25,991 and as of March 30, 2010 the

payoff balance is estimated at $26,076.

     The Debtor moved out of the Real Property at some point in 2006. The record does not

reflect the actual date on which the Debtor left the Real Property, but it is estimated that the

Defendant began paying the mortgage and other expenses without contribution from the Debtor,

around June 2006. The Defendant testified she continued to pay the mortgage until November

2008 or early 2009.[2]

     The Defendant also testified that after the Debtor stopped making any economic

contribution for the Real Property, the Defendant continued to pay the property taxes, water,

and sewage charges. The Defendant's affidavit states that she paid $8,648 on New York City

real estate taxes without any contribution from the Debtor.

     On October 11, 2008 (the "Filing Date"), the Debtor filed a voluntary petition for relief

---

[1] The payoff balance is the sum of: the present unpaid principal balance, interest, late charges, NSF, other fees, attorney fees, legal costs, costs/fees, and escrow advance. The total payoff amount is subject to change due to payment of taxes and/or insurance. Finally, the figures in Chase Bank's analysis are subject to final verification by the Note holder.

[2] According to an affidavit filed by Chase Bank on January 2, 2009, no post-petition mortgage payments have been made since October, 2008.

under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").  Because the

Debtor has not resided at the Real Property since sometime in 2006, she is not entitled to a

homestead exemption.  Further, the bar date on the Debtor's case has passed and the universe of

claims consists of approximately $34,000 of general unsecured claims.

On January 2, 2009, Chase Bank filed a motion for termination of the automatic stay

with respect to the Real Property (the "Lift Stay Motion").  The Lift Stay Motion was granted

and an order was entered vacating the stay as to Chase Bank on May 22, 2009.  According to

the  Defendant's testimony, Chase Bank has commenced a foreclosure proceeding against the

Real Property.

The Trustee's appraiser's report dated February 15, 2010 and his testimony at trial

indicate that the value of the Real Property as of February 12, 2010 is estimated at $540,000.

The Defendant testified in her deposition that the value of the Real Property is at least

$500,000, based on sales in the community.  Similarly, the Debtor's Schedules "A" and "D" in

her petition indicate that the value of the Real Property was $500,000 as of the Filing Date.  The

appraiser also testified that a sale of the Real Property would take between three and six months

of marketing time, and a brokerage fee on the sale would be between four and six percent.  The

Defendant did not introduce any expert opinion as to value or costs of sale. The affidavit of the

Trustee's accountant represented that no taxable gain will be realized by the estate or the

Defendant co-owner on the sale of the Real Property.

The parties agree that a partition of the Real Property is impracticable because it is

comprised of a single family dwelling, and the sale of the estate's interest, alone, would yield

significantly less than a sale free and clear of the Defendant's interest.

The Defendant's affidavit states without further explanation or legal support, "[i]t is self evident that removing me from my home would cause me great hardship." The Defendant testified that she has no intention of selling the house and that she would rather continue to pay the mortgage than pay rent, because she has school-aged children who attend school locally. Additionally, the Defendant testified that her thirty-eight year-old husband moved into the house sometime in the middle of 2009.

The Defendant testified that after she stopped making payments on the mortgage, she set aside what she would have paid towards the mortgage. As of the date of the hearing the Defendant had accumulated approximately $17,000.

### *Discussion*

The Trustee seeks to sell the Real Property free and clear of the Defendant's interest, pursuant to §§ 541, 542 and 363(h) of the Bankruptcy Code, and to determine thereafter the Defendant's distributive interest in the sale proceeds.

### *1. Property of the Estate*

Property of a bankruptcy estate is comprised, with limited exceptions, of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law governs what becomes property of the estate at the time of the filing of the petition. *In re Vassilowitch*, 72 B.R. 803, 805 (Bankr. D. Mass. 1987) (citing *Butner v. United States*, 440 U.S. 48 (1979)). "The debtor's interest in the property as of the date of the filing is determinative." *Id*. (citing *In re Addario*, 53 B.R. 335, 337 (Bankr. D. Mass. 1985)).

**2. Trustee's Burden is Met Pursuant to § 363(h)**

Section 363(h) permits the sale of the Debtor's interest in property as well as that of a non-debtor co-owner only if all of the following four conditions are satisfied:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).  The Trustee bears the burden of proving each of the four elements of § 363(h). Under subsection (h)(3), after the Trustee has made his prima facie case establishing that the estate would benefit from the sale of the residence, the burden shifts to the Defendant to show that the there is a detriment to her.  *See Gray v. Burke (In re Coletta Bros.)*, 172 B.R. 159, 165 (Bankr. D. Mass. 1994).  *See also In re Prakope*, 317 B.R 593, 602 (Bankr. E.D.N.Y. 2004).  The Trustee then bears the ultimate burden to show that the benefit to the estate outweighs the detriment to the Defendant.

The statute protects the interests of the Defendant by giving the non-debtor co-owner "'a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the [non-debtor, co-owner] the value of [her] interest in the property' if the trustee sells it to a third party." *In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989) (citing legislative history).  *See also* 11 U.S.C. §§ 363(i) and (j).

The parties agree that the first, second and fourth elements of § 363(h) have been satisfied in

this case.  This Court agrees.  The third element is that the benefit to the estate from the sale of the property would outweigh the detriment to the Defendant.  That is the subject of this Memorandum Decision.

### a. The Standard under § 363(h)(3)

The first part of the analysis under § 363(h)(3) requires the Plaintiff to establish that a sale of the Real Property would benefit the estate.  *Sapir v. Sartorius*, 230 B.R. 650, 656 (S.D.N.Y. 1999) (citing *In re Grabowski*, 137 B.R. 1, 3 (S.D.N.Y. 1992)).  The Plaintiff's initial burden can be met by showing that "the estate's share of the net proceeds would exceed existing liens on the Debtor's interest in the property."  *See In re Coletta Bros.*, 172 B.R. at 165.  Then the burden shifts to the Defendant to show that there is a detriment to her.  The Second Circuit held in *In re Persky*, that when determining detriment to the co-owner of property held as tenants by the entirety, courts should consider both economic and non-economic factors.  *In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989).

The second part of the § 363(h)(3) analysis is that the benefit to the estate must "outweigh" the detriment to the Defendant.  *See In re Stoll*, 330 B.R. 470, 480 (Bankr. S.D.N.Y. 2005) (where debtor was a one-third owner of assets in a Trust as a co-tenant in common with his siblings, motion for summary judgment was denied because elderly parents lived in the property and detriment to co-beneficiaries in displacing their elderly parents may outweigh the benefit to the estate).

There is no requirement that the benefit exceed the detriment significantly:

Congress could have mandated that the benefit to the estate must exceed the detriment to co-owners by a significant amount but chose instead to require only that

> the benefit to the estate must "outweigh" the detriment in order to tip the scales in
> favor of a sale.  Under the language of the Code a sale that results in a considerable
> or substantial detriment to co-owners is permissible so long as the benefit to the
> estate outweighs that detriment.

*Calumet Farm, Inc.*, 150 B.R. 664, 675 (Bankr. E.D. Ky. 1992)

Ultimately, the Court's decision to allow a § 363(h) sale is an equitable judgment that is

discretionary and fact driven.  *See In re Sturman*, 222 B.R. 694, 709 (Bankr. S.D.N.Y. 1998) (citing

*In re Probasco*, 839 F.2d 1352 (9th Cir. 1988)).


### b. There is a Benefit to the Estate

Benefit to the estate is guided by the value of the estate's interest in the Real Property as of

the date of the bankruptcy filing.  As mentioned earlier, state law determines the estate's interests in

property.  Section 901 of the New York Real Property Actions and Proceedings provides that "[a]

person holding and in possession of real property as joint tenant or tenant in common, . . . may

maintain an action for the partition of the property, and for a sale [of the entire property] if it

appears that a partition cannot be made without great prejudice to the owners."  Under New York

law, absent the agreement of a cotenant, "partition among tenants in common of real property is a

matter of right."  *Mead v. Mitchell*, 17 N.Y. 210, 216 (N.Y. 1858); *Chew v. Sheldon*, 214 N.Y. 344,

349 (N.Y. 1915).  An action for partition by tenants in common puts an end to the tenancy and

"vest[s] in each a sole estate in specific property or an allotment of the lands or tenements.  Unless

such a division can be accomplished, then the joint estate should be sold and the proceeds divided."

*Cahill v. Cahill*, 226 N.Y.S. 199, 206 (N.Y. Sup. Ct. 1927).  The calculation of the share of sale

proceeds to which each co-tenant is entitled includes legal as well as equitable considerations.

*Deitz v. Deitz*, 664 N.Y.S.2d 868, 869 (N.Y. App. Div. 1997) ("Although a partition action is

statutory (RPAPL Art 9), it is equitable in nature and, therefore, an accounting is a necessary

incident thereof.").

> It is well-settled that tenants in common share a rebuttable presumption that each holds an equal undivided one-half interest in the subject premises. However, "partition is an equitable remedy in nature and [sic] Supreme Court has the authority to adjust the rights of the parties so each receives his or her proper share of the property and its benefits."  In a partition action, this Court sits both as a court of law, which must evaluate the wording of the deed, and as a court of equity, which must consider issues of fairness and the respective contributions of the parties.  In determining the equitable division of the sale proceeds, the Court may consider the nature of the parties' relationship, disparities in down payments and mortgage payments, whether any such disparate contributions to the property were intended to be a gift, the reasonable value of improvements and repairs to the property and the reasonable value of rental payments with regard to an ousted co-tenant.

*C.Y. v. H.C*, No. XX07, 2007 WL 1775506, at *1 (N.Y.Sup. Ct. May 30, 2007) (citations

omitted).

In this case, the language of the deed clearly allots a thirty-five percent interest to the

Debtor and a sixty-five percent interest to the Defendant.  Upon consideration of the equitable

factors, the Court concludes that the division of the sale proceeds should not be altered.  Therefore,

the Defendant should receive sixty-five percent of the sale proceeds and the Debtor, thirty-five

percent.

The Defendant and the Debtor were friends who entered into this agreement because neither

of them would qualify for a market rate mortgage alone.  Although the Debtor's cash contribution

to the down payment was only twelve percent, the Defendant testified that other elements of their

living arrangement warranted that the Debtor receive a thirty-five percent interest.  The Defendant

testified that she would be living in the house with her three children and that the Debtor was alone.

Because they had agreed to divide expenses equally, the additional equity that the parties agreed to

in the deed in favor of the Debtor can be characterized as an economic allocation in place of

monetary compensation.

Although the Defendant did not sign the Note, there is no indication on the record that the parties intended only the Debtor to be responsible for payments.  The Defendant did not allege that she made any improvements or repairs to the Real Property and there was no indication by either party that rental payments are due because there was no ouster of the Debtor.  Therefore, the Court concludes that the Debtor and the Defendant intended to share the proceeds of a sale in the relative proportions stated in the deed.

Based on a sale price of approximately $540,000 and an estimate for closing costs, the equity in the Real Property is between $108,985 and $113,780.  The broker's fee is estimated at between four and six percent, totaling around $27,000; the liability on the First Mortgage will continue to accrue over the three to six months it will take to sell the Real Property, resulting in a First Mortgage payoff of between $372,799 and $377,337; similarly, the payoff amount on the Second Mortgage will be between $26,420 and $26,678.  After deducting the costs of sale and liens from the sale price, the Defendant's sixty-five percent interest yields between $70,841 and $73,957; and the Debtor's thirty-five percent interest yields between $38,145 and $39,823.  The Trustee alleges that there is no tax liability to the estate as a result of the sale.

However, the calculation to determine whether a benefit exists for the estate does not end there.  The Defendant is entitled to contribution from the Debtor for the Debtor's share of expenses paid to protect or preserve the Real Property after she ceased making any contributions.  Under state law, this amount, totaling at least $24,000, becomes a lien against the Debtor's interest in the proceeds of the sale.

In an action for partition, a co-tenant who pays more than her share of expenses is entitled to

contribution from other co-tenants.  In *Bailey v. Mormino*, 175 N.Y.S.2d 993 (N.Y. App. Div. 1958), the court found that a co-tenant in a tenancy in common was entitled to one-half of the payments made by her for taxes, principal and interest on the mortgage because the payments were "presumably necessary to prevent default on the mortgage and consequently inured to the benefit of her co-tenants as well as herself." *Bailey v. Mormino*, 175 N.Y.S.2d at 994.  *See also Vlacancich v. Kenny*, 2 N.E.2d 527, 527-30 (N.Y. 1936) (interpreting a contract that created a tenancy in common, the court concluded there "was no necessity for embodying a specific agreement in the writing that respondent should bear his share [of interest, taxes, and carrying charges], as the obligation followed as a matter of law."); *Clute v. Clute*, 90 N.E. 988, 990 (N.Y. 1910).  A co-tenant's right to contribution includes her payments on a mortgage in excess of her share.  *See Hosford v. Hosford*, 80 N.Y.S.2d 306, 309 (N.Y. App. Div. 1948); *Clute v. Clute*, 90 N.E. at 991; *Schukal v. Schukal*, 284 N.Y.S.2d 534, 536 (Dist. Ct. 1967); *Johnson v. Depew*, 305 N.Y.S.2d 243, 244 (N.Y. App. Div. 1969); *Vlcek v. Vlcek*, 346 N.Y.S.2d 893, 893 (N.Y. App. Div. 1973).  Such right becomes a judgment that constitutes a lien against the other co-tenant's interest in the property.  *See Moran v. Thomas*, 117 N.Y.S.2d 190, 192 (N.Y. App. Div. 1952); *Johnson v. Depew*, 305 N.Y.S.2d at 244.  Such lien should be paid before the division of any proceeds of the sale among the parties.  *Grabusch v. Jurgens*, 51 N.Y.S.2d 501, 503 (N.Y. Sup. Ct. 1944).

After the Debtor vacated the Real Property in 2006, the Defendant continued to make payments on the mortgage and paid property taxes, water and sewage charges.  The parties have not presented evidence of the amount the Defendant paid for water and sewage charges.  However, the Defendant testified that the monthly mortgage payments were $2,070 on the First Mortgage and $150 to $180 on the Second Mortgage.  Further, Defendant's affidavit stated that she paid

approximately $8,648 in New York City real estate taxes without contribution from the Debtor.  It

is estimated that the Defendant began making payments on her own around June 2006 and

continued through October 2008, a period of twenty-nine months.  Thus, the Defendant paid $2,070

for twenty-nine months on the First Mortgage, totaling $60,040 and New York City real estate taxes

totaling $8,648.  The total expenses paid on the Second Mortgage and other expenses are not part of

the record, thus the Court will limit its calculations to the First Mortgage and the New York City

real estate taxes, totaling $68,688.  As stated above, the Defendant's share of the Real Property is

sixty-five percent and the Debtor's is thirty-five percent.  Thus, the Defendant's right of

contribution will total thirty-five percent of the amount she paid for the First Mortgage and New

York City real estate taxes, an amount equal to $24,041.

Based on the foregoing calculations, and assuming a sale price of $540,000, in an action for

partition resulting in a sale the net benefit to the estate would be approximately $14,000 - $15,000.[3]

Based on claims filed in this case, this would result in about a forty-five percent distribution to

general unsecured creditors.

Provided that the sale price is at least $540,000, the Court finds that the Trustee has met his

burden of showing that the sale of the property free of the Defendant's interest would result in a

benefit to the estate.

### c. There is a Detriment to the Defendant

The burden now shifts to the Defendant to show that the sale would result in a detriment to

_____

[3] As stated earlier, the Debtor's thirty-five percent share of the net sales proceeds would be
between $38,145 and $39,823.  That number should then be reduced by about $24,000 representing the
Defendant's right of contribution against the Debtor. This leaves the estate with approximately $14,000 -
$15,000 in net proceeds of the sale.

her.  The Second Circuit, in *In re Persky*, set forth a non-exhaustive list of factors to consider when weighing detriment to a non-debtor spouse where real property is held as tenants by the entirety:

> In weighing detriment to the non-debtor spouses a number of variables must be considered when valuing their survivorship interests as well as their present possessory interests: for example, actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home.

*In re Persky*, 893 F.2d at 21.

The court concluded in *Persky* that economic and non-economic factors must be considered when "valuing" the detriment to a non-debtor spouse.  *Id.* at 20-21.  As this is a tenancy in common, some of the factors in *Persky* do not apply, such as actuarial life expectancies of the spouses.

The Debtor has not shown that there would be any economic harm to her if the Real Property were sold in a § 363(h) sale.  Indeed, the Court has already found that a § 363(h) sale could result in approximately $95,000 being paid to the Defendant at closing.[4]  The Debtor's sole argument is that there are minor children living at the Real Property who attend local schools and who would be displaced by a sale.  The Court agrees that the removal of the Defendant and her three children from the home would cause a non-economic detriment to the Defendant.

### d. The Balance of the Equities is in Favor of the Trustee

The burden shifts back to the Trustee to show that the benefit to the estate is greater than the

---

[4]  As stated earlier, the Defendant's sixty-five percent share of the net sales proceeds would be between $70,841 and $73,957.  Add to that $24,000 that the Defendant is entitled to for carrying costs the Defendant paid after the Debtor vacated the property, and you have approximately $95,000 being paid to the Defendant at closing.

detriment to the Defendant. The Trustee correctly argues that payments resulting in a significant dividend to general unsecured creditors from the sale of estate property constitute a substantial benefit to the estate that outweighs the detriment to the Defendant. *See Sapir v. Sartorius*, 230 B.R. at 656 (finding, where the owners were tenants by the entirety, that the defendant presented no evidence to contravert value or to show detriment, therefore, "[p]ayment of a significant dividend to creditors from the sale of a property is a substantial benefit to the estate").

The Court finds that in a § 363(h) sale of real property held as tenants in common, economic detriment to the co-owner should be the prevailing factor. Where the only harm to the non-debtor is non-economic, the defendant has a higher burden to show extraordinary circumstances. *See, e.g.*, *In re McCoy*, 92 B.R. 750, 752 (Bankr. N.D. Ohio 1988) (finding minimal financial benefit to the estate was outweighed by economic and non-economic detriment where co-owner was mentally incompetent and would suffer psychological and emotional detriment if she were not to remain in familiar surroundings). A tenancy in common is a legal relationship into which parties may enter voluntarily. This is distinguishable from a tenancy by the entirety which is the default form of ownership for married couples under New York law.

In the case before the Court, the parties entered into their joint ownership relationship as part of a bargained-for exchange. That is, the parties determined that joint ownership was in their best interests because together they qualified for a mortgage that neither could have financed alone. This relationship therefore provided a benefit to the parties. However, the relationship carries risks as well. That risk is that under state law either party can seek to sell the property as a matter of right. N.Y. Real Prop. Acts. § 901. This is not the case with tenants by the entirety where each spouse is vested with an ownership interest in the whole property and the interests of the tenants are indivisible. This distinction between forms of ownership makes a difference. In fact, § 363(h) was

enacted in 1978 in order give the bankruptcy trustee the ability to sell the indivisible interests of tenants by the entirety – that which could not be done under state law outside of bankruptcy. *See In re Levenhar,* 24 B.R. 331, 332 (Bankr. E.D.N.Y. 1982) (footnote omitted) ("The legislative history of the [1978] Code establishes that § 363(h) of the Code was inserted to permit the sale of marital property . . . .")

Here, the Defendant has not alleged any economic harm, nor has she alleged that there are no alternative rentals in the neighborhood. This Court is "'not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head.'" *In re Persky*, 893 F.2d at 21 (citing *United States v. Rodgers*, 461 U.S. 677, 703-04 (1983)). However, based on the facts presented, the Defendant has not shown that she will be unable to find adequate substitute housing in the area. Indeed, the Defendant may have the ability to remain in possession of the Real Property pursuant to her rights under § 363(i).

Therefore, the Court finds that the third condition of § 363(h) is met because the benefit to the estate outweighs the detriment to the Defendant.

### *Conclusion*

Based on these findings, the Court will grant judgment in favor of the Plaintiff. The Trustee may offer the Real Property for sale at a price that equals or exceeds $540,000, subject to the Defendant's statutory rights. *See In re Calumet Farm, Inc.*, 150 B.R. at 675 (conditioning § 363(h) relief upon a minimum sales price); 11 U.S.C. § 363(i) and (j).

The Court shall enter a Judgment consistent with this Memorandum Decision forthwith.

Dated: Central Islip, New York
      May 3, 2010                 **/s/ Robert E. Grossman**
                                Robert E. Grossman
                                United States Bankruptcy Judge